[No. 3,434.]

FONG YUEN LING, SAM YUEN, YIN TUCK, AND AH YUNG, MERCHANTS AND PARTNERS TRADING UNDER THE FIRM NAME OF WING CHUNG v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF LOS ANGELES.

LIABILITY OF CITY FOR DAMAGE DONE BY A MOB.—Persons whose goods are destroyed by a mob, in a riot in a city, are not entitled to recover from the city the value of the goods destroyed, unless such persons, if they had knowledge of the impending danger, use reasonable diligence to notify the mayor or sheriff of the threatened riot and the apprehended danger to their property; nor are they entitled to recover if they instigate or participate in the riot.

CREDIBILITY OF WITNESSES.—It is the province of the jury to decide on the credibility of witnesses.

RULING OUT TESTIMONY.—If the proffered testimony of a witness upon a matter is ruled out by the Court, on the objection of the opposite party, and two other witnesses are allowed, without objection, to testify to the same matter, the party who offers the testimony is not injured.

IDEM.—If, in an action against a city to recover damage for property destroyed by a mob, the Court rules out testimony that, during the riot, the plaintiff could not have gone on to the street to notify the Mayor, the error, if any, is immaterial, provided that, before the riot commenced, the plaintiff knew of the impending danger, and had ample opportunity to notify the Mayor.

APPEAL from the District Court, Seventeenth Judicial District, County of Los Angeles.

The facts are stated in the opinion.

*Glassel, Chapman & Smith*, for the Appellants.

The firing upon the officers in the Wing Chung store and the alleged participancy of Sam Yuen, occurring about 5 o'clock, can, under no view of the law, be held to be a justification of the outrages of the mob committed five hours afterwards. (Cal. Stat. 1867–8, p. 418; *Moody* v. *Co. of Niagara*, 46 Barb. 659; *Ely* v. *Same* (S. C.) 36 N. Y. 297.)

*F. H. Howard*, City Attorney, and *O. Melveny & Hazard*, for the Respondent.

By the Court, CROCKETT, J.:

The plaintiffs sue as copartners to recover from the city of Los Angeles the value of money and merchandise belonging to the copartnership, alleged to have been destroyed by the mob during a riot which occurred in that city in October, 1871. The action is founded on the Act of March 27, 1868 (Statutes 1867–8, p. 418), prescribing the conditions on which a city shall be liable for property destroyed in a riot.

The verdict and judgment were for the defendant, and the plaintiffs appeal.

There was evidence tending to show that immediately preceding the riot there were in the city of Los Angeles two

rival companies of Chinese, at the head of one of which was Sam Yuen, one of the plaintiffs; that on the day of the riot two Chinamen were arranged before a Justice of the Peace, on the charge of having shot at Yo Hing, the chief of the rival company; that Sam Yuen offered his firm as bail for the accused; that about 5 o'clock in the afternoon six or seven Chinamen were found in the street, near the plaintiffs' store, shooting at each other; that one of them was fatally wounded, before the arrival of the police; that one of the policemen entered the "corral," an inclosed space in the rear of the plaintiffs' store, for the purpose of quelling the disturbance, but found it filled with armed Chinamen, who immediately fired upon him, compelling him to retreat; that another policeman, on going to the front of the store, saw a Chinaman there with a pistol in his hand, and followed him into the store, which he found filled with armed Chinamen, who immediately closed the door and commenced firing upon him; that during the melee he was wounded with a pistol-shot in the arm, and with great difficulty escaped from the building, after numerous shots were fired at him; that one Thompson then approached the door, but was fired upon from within, and was fatally wounded; after which those within the building continued to fire upon those in the street. That another policeman entered the store and found Sam Yuen there, who immediately leveled his pistol and fired at the officer, as did also several other Chinamen; that Sam Yuen knew the officer to be a policeman; that shortly afterward a large crowd collected in front of the store, and in the course of the afternoon and evening prior to 10 o'clock, assaulted the building, broke in the door and roof, and committed the damage which is complained of.

The defenses are: First, that the plaintiffs, or at least one of them (Sam Yuen), instigated and brought about the riot by his unlawful conduct; second, that the plaintiffs made no attempt to notify the Mayor or Sheriff of the threatened riot, as required by the third section of the Act. That section provides that, in actions of this character, the plaintiff shall not recover if it appears that the damage "was occasioned, or in any manner aided, sanctioned, or permitted

by the carelessness or negligence of such person or corporation, nor    *    *    *    *    unless such party shall have used all reasonable diligence to prevent such damage, and shall have used all reasonable diligence to notify the Mayor of such city, or Sheriff of such county, of any threat or attempt to commit such injury to his property by any mob, and of the facts brought to his knowledge." There was no evidence tending in the slightest degree to show that either of the plaintiffs made any effort whatever to notify the Mayor or any other officer of the threatened riot, or "used all reasonable diligence to prevent" the damage to their property. On the contrary, it appears from the uncontradicted testimony of the policeman, that when the shooting first commenced in the street, the plaintiffs' store and the "corral" in the rear of it were filled with armed Chinamen, who immediately fired on the officers when attempting to preserve the peace. It is in the highest degree improbable that this large body of armed men could have assembled in the plaintiffs' store, and in a sheltered place in the rear of it, without their knowledge and privity. The leader of the rival company or faction had been shot at the day before, and plaintiffs offered themselves as bail for his assailants. The arming and assembling of Sam Yuen's clan doubtless had reference to an impending conflict between the two companies. If the plaintiffs had been anxious to prevent a riot, it is clear, from the proof, that they had ample opportunity to notify the Mayor, and to summon the police before the shooting commenced. But instead of requesting aid to prevent violence and bloodshed, it appears from the testimony of one of the officers that Sam Yuen resisted the interference of the police, and himself fired at the officer. Another officer was wounded in the store, and a citizen, in attempting to quell the riot, was shot down at the door. On these facts the plaintiffs are not entitled to recover: 1st, because they made no effort to notify the Mayor; and, 2d, because at least one of them instigated and participated in the riot, whilst the circumstances raise a strong presumption that the others were cognizant of the impending conflict between the two companies and took no steps to

prevent it.   It is not probable that so large an armed force could have assembled in and around their store, pending the quarrel between the two companies, except with their knowledge of its purpose.

There was evidence tending to show that when the firing commenced in the street, and soon after in the store, Sam Yuen was at his private residence and not at the store. But the policeman (Sanchez) testifies positively that Sam Yuen fired at him in the store, and it was for the jury to decide upon the credibility of the witnesses.

During the examination of the witness Lopez, the plaintiffs asked him whether, after the firing commenced at the Coronel building, it was possible for a Chinaman to have gone on the street in that vicinity without being killed? The question being objected to, was ruled out by the Court, and this ruling is assigned as error.   It is claimed to have been material, as tending to show that after the firing commenced it was impracticable for the plaintiffs to have notified the Mayor.   But two other witnesses for the plaintiffs (Gard and Harris) testified without objection "that during the progress of the riot it was unsafe for a Chinaman to be seen on the street," and there was no rebutting testimony on that point.   The plaintiffs, therefore, had the benefit of that fact before the jury; and if the question to Lopez had been admitted, it could not have strengthened their case.   But it was immaterial, for the reason that before the firing commenced, the plaintiffs must have had knowledge, as we have seen, of the impending danger, and had ample opportunity to notify the Mayor.   So far from doing it, one of them actively participated in the riot, and resisted, with violence, the efforts of the police to quell it.

We do not understand the instructions or any of them, to assume, as claimed by counsel, that the plaintiffs, or one of them, did in fact instigate the riot; nor do we discover any error in the giving or refusal of instructions prejudicial to the plaintiffs.

Judgment affirmed.   Remittitur forthwith.